TINA WOLFSON (SBN 174806)
twolfson@ahdootwolfson.com
ROBERT AHDOOT (SBN 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505-4521
Telephone: 310.474.911
Facsimile: 310.474.8585

ANDREW W. FERICH (admitted *pro hac vice*)
aferich@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: 310.474.9111
Facsimile: 310.474.8585

*Class Counsel for Plaintiffs and the Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRACE BEYER, CHARLES TYER, CHRISTOPHER HAUSER, and STEFANIE BURTON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FLAGSTAR BANCORP, INC., ACCELLION, INC., and FLAGSTAR BANK FSB,<br><br>Defendants. | Case No. 5:21-cv-02239-EJD<br><br>**PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO SEVER AND TRANSFER CLAIMS AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>DATE:   April 14, 2022<br>TIME:    9:00 A.M.<br>JUDGE:  Hon. Edward J. Davila<br>CTRM:   4, 5th Floor |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION.................................................................................................. 1

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................................ 4

III. ARGUMENT ...................................................................................................... 7

    A. Proposed Intervenors Fail to Meet Their Burden on Intervention as of Right............ 7

        1. The Attempted Intervention Is Untimely ........................................................ 8

        2. Proposed Intervenors Have No Significantly Protectable Interest in
           Objecting to Preliminary Approval, or in Having This Matter
           Adjudicated in the Eastern District of Michigan Rather Than the
           Northern District of California.................................................................... 9

        3. Proceeding in This Court Does Not Impair Proposed Intervenors'
           Ability to Protect Their Interests ............................................................... 10

        4. The Settling Plaintiffs and Proposed Class Counsel Adequately
           Represent the Proposed Intervenors' Interests .............................................. 11

    B. The Court Should Decline Permissive Intervention.................................................. 13

    C. The Request for Severance and Transfer Should Be Denied .................................. 14

    D. The Objections Have No Merit ............................................................................. 17

        1. The Settlement Consideration Is Excellent in Light of Approved
           Settlements and the Risks of Litigation ..................................................... 17

        2. There Was No "Reverse Auction" ............................................................. 20

IV. CONCLUSION .................................................................................................. 21

PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO SEVER AND
TRANSFER CLAIMS AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-02239-EJD

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adlouni v. UCLA Health System Auxiliary, et al.*,
   No. BC 589243 (Cal. Super. Ct.) ............................................................................................18

*Alaniz v. Cal. Processors, Inc.*,
   73 F.R.D. 269 (N.D. Cal. 1976) ..............................................................................................10

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
   946 F.2d 622 (9th Cir. 1991) ..................................................................................................14

*Angus, et al. v. Flagstar Bank, FSB*,
   No. 2:21-cv-10657-AJT-DRG (E.D. Mich. Sept. 21, 2021) ....................................2, 4, 17

*Arakaki v. Cayetano*,
   324 F.3d 1078 (9th Cir. 2003) ................................................................................................12

*ASUSTeK Computer v. AFTG-TG LLC*,
   2011 WL 6845791 (N.D. Cal. Dec. 29, 2011) ........................................................................14

*California v. Tahoe Reg'l Planning Agency*,
   792 F.2d 775 (9th Cir. 1986) ..................................................................................................12

*Cedars–Sinai Med. Ctr. v. Shalala*,
   125 F.3d 765 (9th Cir. 1997) ..................................................................................................14

*Cercas, et al. v. Ambry Genetics Corp.*,
   No. 8:20-cv-00791 (C.D. Cal.) ...............................................................................................13

*Cicero v. DirecTV, Inc.*,
   2010 WL 11463634 (C.D. Cal. Mar. 2, 2010) .........................................................................10

*Cochran v. Accellion, Inc.*,
   2021 WL 5161921 (N.D. Cal. Nov. 5, 2021) ............................................................... *passim*

*Cohorst v. BRE Props.*,
   2011 WL 3475274 (S.D. Cal. Aug. 5, 2011) ...........................................................................10

*Cotter v. Checkers*,
   No. 8:19-cv-01386-VMC-CPT (M.D. Fla.) ............................................................................13

*Embry v. Acer Am. Corp.*,
   2012 WL 13059908 (N.D. Cal. Jan. 27, 2012) ........................................................................10

- ii -

*Fehlen, et al. v. Accellion, Inc.*,
  No. 5:21-cv-01353-EJD (N.D. Cal.) ...................................................................18

*Gomes v. Eventbrite, Inc.*,
  2020 WL 6381343 (N.D. Cal. Oct. 30, 2020) ......................................................10

*Gordon, et al. v. Chipotle Mexican Grill, Inc.*,
  No. 17-cv-01415-CMA-SKC (D. Colo.) ..............................................................12

*Henderson v. Kalispell Regional Healthcare*,
  No. CDV-19-0761 (Mont. 8th Judicial Dist. Jan. 5, 2021) ..................................18

*In re Anthem, Inc. Data Breach Litig.*,
  No. 5:15-md-02617-LHK (N.D. Cal.) ..................................................................18

*In re Bozic*,
  888 F.3d 1048 (9th Cir. 2018) .............................................................................14

*In re Experian Data Breach Litig.*,
  No. 8:15-cv-01592 (C.D. Cal.) .............................................................................18

*In re Office of Personnel Mgmt. Data Sec. Breach Litig.*,
  No. 1:15-mc-01394-ABJ (D.D.C.) ........................................................................13

*In re Premera Blue Cross Customer Data Sec. Litig.*,
  No. 3:15-md-2633-SI (D. Or.) ..............................................................................18

*In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*,
  No. 1:14-md-02583 (N.D. Ga. Feb. 2, 2015) .......................................................12

*In re: Accellion, Inc., Customer Data Security Breach Litig.*,
  MDL No. 3002 (J.P.M.L.) ......................................................................................4

*In re: Equifax Inc. Customer Data Security Breach Litig.*,
  No. 1:17-md-2800-TWT (N.D. Ga.) ......................................................................18

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
  787 F.3d 1237 (9th Cir. 2015) .............................................................................14

*Lane v. Facebook, Inc.*,
  2009 WL 3458198 (N.D. Cal. Oct. 23, 2009) ...................................................1, 9

*League of United Latin Am. Citizens v. Wilson*,
  131 F.3d 1297 (9th Cir. 1997) .........................................................................7, 12

*Martin v. Cargill, Inc.*,
  295 F.R.D. 380 (D. Minn. 2013) .....................................................................15, 16

*Martin, et al. v. Cargill, Inc.*,
  No. 13-cv-02563-RHK-JJG (D. Minn. May 2, 2014) ...........................................16

- iii -

*Miller v. Ghirardelli Chocolate Co.*,
   2013 WL 6776191 (N.D. Cal. Dec. 20, 2013) ...............................................................12

*Negrete v. Allianz Life Ins. Co.*,
   523 F.3d 1091 (9th Cir. 2008)......................................................................................20

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   523 F.3d 1091 (9th Cir. 2008)......................................................................................17

*Nelson, et al. v. Idaho Central Credit Union, et al.*,
   No. CV03-20-00832, CV03-20-03221 (Idaho 6th Judicial Dist. May 25, 2021) ............18

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982)..........................................................................................14

*Pearson v. Target Corp.*,
   968 F.3d 826 (7th Cir. 2020)..............................................................................2, 7, 17

*Petrol Stops Nw. v. Cont'l Oil Co.*,
   647 F.2d 1005 (9th Cir. 1981)........................................................................................8

*Pieterson v. Wells Fargo Bank, N.A.*,
   2019 WL 1466963 (N.D. Cal. Feb. 14, 2019).................................................................17

*Raquedan v. Centerplate of Delaware Inc.*,
   376 F. Supp. 3d 1038 (N.D. Cal. 2019) ......................................................................8, 9

*Remijas v. Neiman Marcus Grp., LLC*,
   794 F.3d 688 (7th Cir. 2015)........................................................................................12

*Remijas, et al. v. The Neman Marcus Group, LLC*,
   No. 1:14-cv-01735 (N.D. Ill. May 2, 2020) ..................................................................12

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
   314 F.3d 1180 (10th Cir. 2002).....................................................................................20

*Tech. Training Assoc., Inc. v. Buccaneers Ltd. P'ship*,
   874 F.3d 692 (11th Cir. 2017).......................................................................................11

*U.S. v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004)..........................................................................................8

*United States v. Alisal Water Corp.*,
   370 F.3d 915 (9th Cir. 2004)..........................................................................................7

*United States v. State of Or.*,
   745 F.2d 550 (9th Cir. 1984)..........................................................................................8

*Zepeda v. PayPal, Inc.*,
   2014 WL 1653246 (N.D. Cal. Apr. 23, 2014) ...........................................................9, 10

*Zepeda v. PayPal, Inc.*,
    2014 WL 4354386 (N.D. Cal. Sept. 2, 2014) ........................................................................9

**Rules**

Fed. R. Civ. P. 24(a)(2) ........................................................................................................7
Fed. R. Civ. P. 24(b)(1)(B) ................................................................................................13
Fed. R. Civ. P. 24(b)(3) ......................................................................................................13

1    Plaintiffs Grace Beyer, Charles Tyer, Christopher Hauser, and Stefanie Burton ("Plaintiffs"),

2    individually and on behalf of all others similarly situated, respectfully submit this opposition to the

3    "Motion to Intervene and to Sever and Transfer Claims and in Opposition to Preliminary Approval of

4    Settlement" (ECF No. 62) (the "Motion") filed December 23, 2021 by Proposed Intervenors.

5    **I.      INTRODUCTION**

6         The Proposed Intervenors are the named plaintiffs in *Angus*, a class-action suit filed in the

7    United States District Court for the Eastern District of Michigan on March 25, 2021, just three business

8    days before this case was filed, asserting additional claims for statutory damages under the California

9    Consumer Privacy Act ("CCPA"). Angus' attorney John Yanchunis of the Florida-based firm Morgan

10   & Morgan is among the group of attorneys who also attempted to intervene and stymie the Settlement

11   in *Cochran v. Accellion, Inc.*, No. 5:21-cv-01887 (N.D. Cal.) ("*Kroger*"), to no avail. This same group

12   of lawyers that appeared before this Court in *Kroger*, now appear in the Michigan *Angus* case against

13   Flagstar.

14        The Court should deny this Motion to Intervene as it did in *Kroger* because the "Proposed

15   Intervenors fail to identify a protectable interest that will be impaired if they are unable to intervene . . .

16   [t]here is no 'significantly protectable interest incumbent in an opportunity to object to preliminary

17   approval,' because 'the Court will make its determination as to whether *final* approval should be

18   granted based on the law and the facts before it at that point in time . . . ." *Kroger*, ECF No. 99, 3:23-

19   4:2 (citing *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2009 WL 3458198, at *5 (N.D. Cal. Oct. 23,

20   2009) (emphasis in original).

21        Additionally, the Motion is untimely. Proposed Intervenors waited nearly five months to file

22   on December 23, 2021, despite having knowledge of the Settlement in July 2021. This delay alone

23   defeats intervention.

24        The circumstances surrounding this Settlement do not change the analysis, despite counsel's

25   mud-slinging rhetoric. The fact that Yanchunis was appointed lead counsel in the Michigan cases and

26   was not invited to attend the second mediation is no reason to grant intervention and does not change

27   the fact that the Settlement is fair, reasonable, and adequate. As Magistrate Judge Grand pointed out

28   in *Angus* in his Order granting Flagstar's Motion to Stay pending this Court's review of the proposed

Settlement over Yanchunis' objections, "the Angus plaintiffs point to no law that *required* Flagstar to include them in this follow-up mediation session, and courts have concluded that a defendant is free to settle with a party in one jurisdiction not represented by interim lead counsel in another jurisdiction." Order Granting Motion to Stay*, Angus, et al. v. Flagstar Bank, FSB*, No. 21-10657 (E.D. Mich. Sept. 21, 2021), ECF No. 46 (citing *Pearson v. Target Corp.,* 968 F.3d 826, 830, 835 (7th Cir. 2020) (rejecting a settlement objector's argument that, given his counsel's pre-settlement interim appointment in another jurisdiction, "his counsel was the only counsel 'with authority' to settle his proposed class's claims")) (emphasis in original). Yanchunis hides the fact that even the Eastern District of Michigan was not persuaded by his arguments and that *Angus* is stayed pending this Court's review of the settlement. *See Id.*, ECF No. 46, attached to this opposition as **Exhibit A**.

The accusation that the Settlement is a result of a reverse auction is empty rhetoric. Flagstar was willing to continue the conversation with Ahdoot & Wolfson, P.C. ("Ahdoot Wolfson") and attend a second mediation after the first one did not result in a resolution. Wolfson—whose duty of loyalty is to the class, not to Yanchunis or any other counsel—had an obligation to explore the opportunity to reach a fair, reasonable, and adequate settlement promptly after the Flagstar breach. The amount of the Settlement was the result of the mediator's double-blind proposal at the second mediation, after rigorous negotiations and sufficient information to evaluate the claims. It was never presented to *Angus* counsel to accept or reject. There was no auction. Ahdoot Wolfson accepted the proposal because they believe it is fair, reasonable, and adequate, and in the best interest of the class, as comprehensively set forth in the Motion for Preliminary Approval, and for no other reason.

The motion to sever and transfer should also be denied. *Angus* is stayed in deference to this Court reviewing the proposed Settlement. This Court has the necessary evidence to ascertain whether the Settlement meets preliminary approval standards. It is in the best interest of the class and judicial economy to complete this process. There is no public interest in disrupting a process, that, if successful, would resolve all pending cases and provide real benefits to the class members without the further risk of litigation. The only interest that would be served by Yanchunis' request is his own. The fact that Yanchunis waited nine months after the filing of these cases to bring the transfer motion and did so only after the Settlement was reached without him speaks to his motivations and further supports

denial.

Other than unfounded mud-slinging rhetoric, Yanchunis has two basic complaints about the Settlement: 1) there is not enough money *per capita*, and 2) there is inadequate injunctive relief. The first argument presents four settlements with class sizes ranging from approximately 17,000 to 130,000 class members without any other analysis. This argument ignores the fact that every case is unique and has its own settlement factors. It also ignores the many other settlements (in some of which Yanchunis was counsel) involving similar sensitive information on behalf of multi-million member classes that were accomplished after years of litigation and are within the range of this Settlement—such as *Equifax* ($2.59 *per capita*, Yanchunis endorsed settlement as PSC member), *Adlouni v. UCLA Health Systems* ($0.44 *per capita*, Yanchunis endorsed settlement as plaintiffs' counsel), *Premera* ($3.61 per capita), *Experian* ($1.37 *per capita*), *Anthem* ($1.45 *per capita*), and numerous others (*see* ECF No. 54 at 27 (*per capita* chart in Motion for Preliminary Approval))—and the myriad other arguments as to why this Settlement is fair, as set forth in the Motion for Preliminary Approval.

Yanchunis' complaint that the injunctive relief does not include data encryption and destruction components ignores the relevant facts and the preliminary approval motion filed in this matter. The Settlement explicitly requires Flagstar to "undertake measures to secure, or securely destroy if and when it is no longer needed for legitimate business purposes, all information that was subject to the FTA Data Breach, and confirm that this has been completed." Settlement Agreement ("SA"), ECF No. 55, at §§ 4.1.1-4.1.4. Separately, Flagstar confirmed that it has implemented additional automated compliance with its data retention policies on file-sharing platforms to ensure data will be auto-deleted after thirty days. ECF No. 54 at 11:3-4. Furthermore, Plaintiffs' Motion for Preliminary Approval is explicit that Flagstar, as a federally regulated bank, "must comply with governing cybersecurity and data privacy regulations, including those from the Office of the Comptroller of the Currency (OCC), the Gramm-Leach-Bliley Act (GLBA), and the Federal Financial Institutions Examinations Council (FFIEC)." *Id.* at 8:17-21. The GLBA's implementing regulations call for encryption of PII, and during confirmatory discovery, Plaintiffs ascertained from Flagstar that it maintains a Cryptography Policy and encrypts PII both during transmission and when the data is at rest in endpoints. Declaration of Tina Wolfson ("Wolfson Decl.") ¶¶ 11-12, filed concurrently herewith.

1    This last-minute intervention and transfer attempt is nothing more than sour grapes by
2    Yanchunis over losing his perceived control of this case. But the Court need not concern itself with
3    counsel's feelings or expectations, only with what is best for the class. There is an opportunity for a
4    significant nationwide settlement here that provides real and immediate benefits to the class and the
5    Court should evaluate it on its own terms. The Court should deny the Motion and proceed with the
6    preliminary approval process.

7    **II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

8        The Michigan case, *Angus et al v. Flagstar Bank, FSB*, 2:21-cv-10657-AJT-DRG (E.D. Mich.),
9    was filed on March 25, 2021, and this case was filed three business days later on March 30, 2021. Both
10   cases allege that Flagstar failed to properly secure its customers' personally identifiable information,
11   leading to a data breach affecting approximately 1.5 million customers. While this case includes claims
12   for the California Consumer Privacy Act*, the operative *Angus* complaint (ECF No. 18) does not.

13       After unsuccessful meet and confer communications with other plaintiffs' counsel, including
14   some of the counsel in *Angus*, in an attempt to coordinate and streamline the cases (Wolfson Decl. ¶¶
15   5-6), on March 31, 2021, Plaintiffs moved the Judicial Panel on Multidistrict Litigation ("JPML") to
16   transfer the Michigan cases against Flagstar, as well as all other Accellion FTA Breach-related cases
17   to this Court, but that motion was denied. *See In re: Accellion, Inc., Customer Data Security Breach*
18   *Litigation,* MDL No. 3002 (J.P.M.L.), ECF Nos. 1, 88. Counsel for Proposed Intervenors opposed
19   JPML consolidation in all respects and did not request to move the present case to Michigan by any
20   other means. *Id.*, ECF No. 34. Contrary to his representations to the JPML, Yanchunis never reached
21   out to coordinate the cases against Flagstar and they simply proceeded separately. Wolfson Decl. ¶ 6.

22       On July 13, 2021, after Ahdoot Wolfson initiated resolution discussions and obtained the
23   necessary information to evaluate any potential resolution, Flagstar participated in a joint mediation
24   with Plaintiffs' counsel and Proposed Intervenors' counsel before Judge Gandhi. *Id.* ¶ 7. Proposed
25   Intervenors claim that they refused to agree to terms that were acceptable to Plaintiffs, but as Proposed
26   Intervenors themselves acknowledge, Flagstar did not reach agreement with Plaintiffs either that day.
27   *Id*. The facts thus belie the heroic pose that Proposed Intervenors strike. In fact, the Settlement amount
28   is a result of Judge Gandhi's double blind mediator proposal at the end of the *second* day of mediation

on July 26 (ECF No. 54 at 2:4-10) and had never been presented to Yanchunis or his co-counsel to accept or deny. Wolfson Decl. ¶ 10.

Proposed Intervenors make much of a status conference held in the Michigan court on July 16, 2021, in which counsel for Proposed Intervenors and counsel for Plaintiffs appeared. Proposed Intervenors paint Plaintiffs' counsel as insincere for expressing an intent to move for appointment as interim lead counsel in the Michigan case (which the Court mooted without the benefit of Ahdoot Wolson's application and an actual hearing on the leadership issue, or the knowledge that Ahdoot Wolfson spearheaded settlement efforts, by appointing Yanchunis simply because he filed the first case), and for pledging to cooperate with Proposed Intervenors' counsel in that proceeding. This again is much ado about nothing. It was known to all that Plaintiffs were pursuing the present case in this Court. Plaintiffs neither made nor owed anyone a commitment to abandon or stall the present case in favor of the Michigan case or Yanchunis.

One thing to note about that status conference: Yanchunis did not apprise Judge Tarnow that Yanchunis' firm attended a mediation that came about as a result of Ahdoot Wolfson's efforts, not even when Judge Tarnow steered the parties toward early resolution. Mot., Ex. B (Motion Hearing Transcript), ECF No. 62-2 at 21:20-23:5. While accusing Plaintiffs' and Flagstar's counsel of "secrecy," Yanchunis neglects to mention that he was not forthcoming when he perceived an opportunity (illusory as it was) to control the case. Further, Yanchunis' arguments that the Settlement is suspect because of its early timing is belied by the fact that his law partner attended the first mediation and Yanchunis appears confident in his evaluation of the Settlement even though he conducted no discovery, formal or otherwise.

On July 26, 2021, Flagstar and Plaintiffs conducted a second mediation before Judge Gandhi. Wolfson Decl. ¶ 8. This time, agreement was reached on a $5.9 million settlement pursuant to Judge Gandhi's double blind mediators' proposal, after a long day of zealous negotiations. *Id.* ¶; ECF No. 54 at 7:11-16. Ahdoot Wolfson accepted the proposal because they believe it is fair, reasonable, and adequate, and in the best interest of the class, as comprehensively set forth in the Motion for Preliminary Approval, and for no other reason. Wolfson Decl. ¶ 8.

Proposed Intervenors repeatedly cast aspersions on Plaintiffs' counsel for participating in a

"secret" second mediation with Flagstar (Motion at 2, 5, 8, 9, 14, 20), but Plaintiffs' counsel were never under any obligation to engage solely in joint mediations with other plaintiffs' counsel or to breach their confidentiality obligations in order to appease Yanchunis. Wolfson Decl. ¶ 9. To the contrary, Plaintiffs' counsel owed Plaintiffs and the class a duty to negotiate with Flagstar in good faith with or without Proposed Intervenors' counsel. *Id.* And when Flagstar expressed a willingness to engage in a second mediation with Plaintiffs in this case, Ahdoot Wolfson fulfilled its fiduciary duty to the class to explore whether a fair, reasonable, and adequate settlement could be reached. *Id*. The amount of the Settlement was not presented to any party until the mediator's proposal after a long day of zealous negotiations, so it was never for Yanchunis to accept or deny. *Id*. ¶ 10. There was no "auction". *Id*.

On July 28, 2021, Flagstar moved to stay the Michigan *Angus* case in view of the Settlement here. *Angus,* ECF No. 30. Proposed Intervenors opposed. *Id.*, ECF No. 34.

On September 3, 2021, Plaintiffs moved in this case for preliminary approval of the Settlement, noticing the hearing for January 20, 2022. ECF No. 54. On September 13, 2021, Flagstar moved to advance the hearing to October 18, 2021 (ECF No. 57), but the Court denied that request (ECF No. 60).

On September 21, 2021, Magistrate Judge David R. Grand granted Flagstar's motion to stay the Michigan case pending the outcome of the present case. *Angus*, ECF No. 46. In granting the stay, Judge Grand observed the absence of the CCPA claim from the *Angus* complaint and opined that while "none of the named plaintiffs [in *Angus*] have alleged an actual injury resulting from the data breach, the *Beyer* case asserts a claim under the California Consumer Protection Act, which provides for statutory damages ranging from $100 to $750 per class member." *Angus*, ECF No. 46, at 2 (Ex. A). Judge Grand concluded that it made sense for Flagstar to deal with the plaintiffs who had the most leverage. *Id.* at 2 (*Angus* plaintiffs plead no actual injury). Judge Grand also noted that Proposed Intervenors' arguments that they had some right to be included in the second mediation had no support in the law. *Id.* at 2-3 n.2 (". . . the *Angus* plaintiffs point to no law that required Flagstar to include them in this follow-up mediation session, and courts have concluded that a defendant is free to settle with a party in one jurisdiction not represented by interim lead counsel in another jurisdiction.") (citing

- 6 -

*Pearson*, 968 F.3d at 830, 835). Proposed Intervenors filed objections to the stay decision (*Angus*, ECF Nos. 47, 50), but there has been no ruling and the Michigan case remains stayed.

On December 23, 2021, nearly five months after learning of the Settlement in this case, and nearly four months after Plaintiffs filed the motion for preliminary approval, Proposed Intervenors filed the present motion seeking to derail this proceeding and a separate administrative motion to shorten the time for hearing the intervention motion or, alternatively, postpone the preliminary approval hearing. ECF No. 63. On January 4, 2022, the Court entered an order postponing the preliminary approval hearing until May 19, 2022, setting a hearing date on the intervention motion for April 14, 2022, and requiring responses to the intervention motion to be filed by January 18, 2022. ECF No. 65.

## III.    ARGUMENT

Proposed Intervenors fail to carry their burden of establishing either an entitlement to intervention as of right or that permissive intervention is warranted. Their arguments regarding severance and fairness are equally without merit and should be rejected as well.

### A.    Proposed Intervenors Fail to Meet Their Burden on Intervention as of Right

Federal Rule of Civil Procedure Rule 24(a)(2) permits intervention as of right by any party who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Ninth Circuit requires a prospective intervenor to show four elements in order for a court to allow intervention: "(1) the application must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the transaction that is the subject of the litigation; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the parties before the court." *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). "The party seeking to intervene bears the burden of showing that *all* the requirements for intervention have been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (citation omitted) (emphasis in original).

Proposed Intervenors have not met their burden of proving that they can intervene as of right in this lawsuit. None of the four requirements for such intervention are satisfied.

### 1. The Attempted Intervention Is Untimely

To determine whether intervention is timely, the Ninth Circuit looks to: "(1) the stage of the proceeding; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. State of Or.*, 745 F.2d 550, 552 (9th Cir. 1984) (citing *Petrol Stops Nw. v. Cont'l Oil Co.*, 647 F.2d 1005, 1009 (9th Cir. 1981)); *accord United States v. Carpenter*, 298 F.3d 1122 (9th Cir. 2002).

Proposed Intervenors' attempt to intervene shortly before the originally scheduled preliminary approval hearing was late and should be denied. Although the stage of the proceeding here may be early compared to a trial calendar, it has grown late on the timeline of the pending Settlement. Proposed Intervenors knew by July 28, 2021 that a settlement had been reached in this case, and Plaintiffs filed the motion for preliminary approval of the Settlement on September 3, 2021. Yet, Proposed Intervenors did not move to intervene until nearly five months later, on December 23, 2021, leaving barely enough time to complete briefing before the preliminary approval hearing, originally scheduled for January 20, 2022. The Court subsequently moved the hearing to May 19, 2022. ECF No. 65. As a result of Proposed Intervenors' actions, the proceedings are delayed by three months, and the Class is denied relief for as long, assuming the Court ultimately approves the Settlement.

The nearly four-month delay in seeking intervention is excessive on its face and renders the Motion untimely. The Court should not further delay the proceedings by allowing intervention and the further delay and disruption it would cause. *See Alisal Water Corp.*, 370 F.3d at 922 ("[A] party's seeking to intervene merely to attack or thwart a remedy rather than participate in the future administration of the remedy is disfavored." (citing *State of Or.*, 913 F.2d at 588)); *Raquedan v. Centerplate of Delaware Inc.*, 376 F. Supp. 3d 1038, 1042 (N.D. Cal. 2019) (denying intervention where "[a]llowing [proposed intervenor] to intervene at this late stage could derail the parties' settlement" and "would prejudice Plaintiffs and Defendant.").

Proposed Intervenors fail to satisfy the first element for intervention, and the Motion should be denied for this reason alone.

**2. Proposed Intervenors Have No Significantly Protectable Interest in Objecting to Preliminary Approval, or in Having This Matter Adjudicated in the Eastern District of Michigan Rather Than the Northern District of California**

Two months ago, in another Accellion FTA Data Breach-related litigation, this Court rejected a similar attempt at intervention by virtually the same group of attorneys on the operative complaint in *Angus*, which included Yanchunis. *See Cochran v. Accellion, Inc.*, No. 5:21-cv-01887-EJD, 2021 WL 5161921 (N.D. Cal. Nov. 5, 2021). Quoting *Lane v. Facebook, Inc.*, this Court explained that there is no "significantly protectable interest incumbent in an opportunity to object to preliminary approval," and that "'the Court will make its determination as to whether *final* approval should be granted based on the law and facts before it at that point in time . . . and [will] not be influenced by previously granted *preliminary* approval.'" *Cochran*, 2021 WL 5161921, at *2 (quoting *Lane*, 2009 WL 3458198, at *5) (emphasis in original). Any interest that could be served by intervention at this stage is equally served by objection in the ordinary course at the final-approval stage.

Proposed Intervenors contend that the opportunity to object later is inferior to the opportunity to intervene and derail this entire proceeding now. But that argument presumes this Court will fail to earnestly adjudicate the objections and thus fail to do its job. If Proposed Intervenors have valid, substantial objections, this Court can be trusted to give those objections all due consideration. *See, e.g., Cochran*, 2021 WL 5161921, at *2 (citing *Zepeda v. PayPal, Inc.*, No. 10-cv-02500-SBA (JCS), 2014 WL 1653246, at *4, *8 (N.D. Cal. Apr. 23, 2014), *objections overruled*, No. C 10-1668 SBA, 2014 WL 4354386 (N.D. Cal. Sept. 2, 2014)); *Raquedan*, 376 F. Supp. 3d at 1042 (". . . Rule 23 provides adequate means to protect [proposed intervenor's] interests as an absent class member, as [proposed intervenor] may object to the settlement or opt out.").

Proposed Intervenors have no significant protectable interest in having their claims adjudicated in the Eastern District of Michigan rather than the Northern District of California. This Court handles a great deal of complex class-action litigation and does not take a back seat to the Michigan court in experience or wisdom.

Proposed Intervenors fail to satisfy the second element for intervention, and the Motion should be denied for this reason alone.

### 3. Proceeding in This Court Does Not Impair Proposed Intervenors' Ability to Protect Their Interests

Proposed Intervenors have well-established procedures to protect their interests in this case, and their time for using those procedures has not passed. Courts in the Ninth Circuit have held, time and again, that absent class members who will have the ability to object to or opt out of a settlement cannot intervene in a settlement. This Court's decision just two months ago in *Cochran* followed that settled course. *Cochran*, 2021 WL 5161921, at *2 ("[C]ourts in this circuit have consistently held that 'intervention of right is unavailable' where, as in this case, the settlement agreement allows the putative intervenors to protect their interests by opting out of the settlement class or participating in the fairness hearing process."); *see also Embry v. Acer Am. Corp.*, No. C 09-01808 JW, 2012 WL 13059908, at *1 (N.D. Cal. Jan. 27, 2012) ("[N]one of Objectors' asserted objections are unique to their interest in the litigation; all represent the sorts of generalized objections that tend to be raised through the review process. Further, the proposed settlement does not impair Objectors' ability to protect their interests, as Objectors are free to opt out of the settlement if they desire to do so. Thus, the Court finds that the ability to object as members of the class, in combination with the ability to opt out of the settlement, adequately protects the interests of Objectors, and that Objectors have therefore not asserted any basis for allowing intervention."); *Gomes v. Eventbrite, Inc.*, No. 5:19-CV-02019-EJD, 2020 WL 6381343, at *3 (N.D. Cal. Oct. 30, 2020) (collecting cases); *Zepeda,* 2014 WL 1653246, at *8 (holding that the proposed intervenors could attack the settlement, e.g., at the final approval hearing or opt out and bring their own lawsuit); *Cohorst v. BRE Properties, Inc.*, No. 10cv2666 JM (BGS), 2011 WL 3475274, at *6 (S.D. Cal. Aug. 5, 2011) (same); *Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 11463634, at *2 (C.D. Cal. Mar. 2, 2010) ("Because there has been no final approval, the Proposed Intervener have not demonstrated any impairment or impediment to their ability to protect their interest in the claims constituting the subject of the instant litigation."); *Alaniz v. Cal. Processors, Inc.,* 73 F.R.D. 269, 289 (N.D. Cal. 1976) (holding that unnamed class members' ability to opt out of the settlement "precludes the Intervenors from satisfying the impairment-of-interest test").

Proposed Intervenors acknowledge the abundance of settled authority in this Circuit, but instead rely on decisions from other Circuits. Those decisions are not persuasive. In essence, Proposed

Intervenors ask the Court to put the exception before the rule. If there is any case where unnamed class members' interests are protectable only by intervention without waiting for the objection process, it is certainly not the norm. And while Proposed Intervenors cite concerns that referring would-be intervenors to the objection process would swallow up the purpose of intervention, it is even more problematic that an open-door permissiveness to intervention would swallow up the purpose of the objection process. Not surprisingly, decisions like *Technology Training Associates, Inc. v. Buccaneers Limited Partnership*, 874 F.3d 692 (11th Cir. 2017), are really not so much about the third element (impairment), but rather the fourth (adequacy of representation). The concern that class members should be able to intervene "if their interests are not adequately represented by existing parties" (Motion at 13 (quoting *Tech. Training Assocs.*, 874 F.3d at 696)) plainly concerns adequacy of representation, not impairment. The authority on which Proposed Intervenors rely is distinguishable and not relevant in this context.

The path followed by this Court (including in *Kroger*) and throughout this Circuit is far more logical and efficient. The proper time, place, and manner for Proposed Intervenors' concerns to be heard is at the objection stage. Their concerns with the terms of the Settlement amount to a simple, straightforward dissatisfaction with the monetary and injunctive relief. It goes without saying that this Court is perfectly capable of addressing those concerns in response to objections filed in the ordinary course. There is nothing exceptional about this case to warrant departure from the usual rule that adjudicating such concerns via objection rather than intervention does not constitute an impairment of would-be intervenors' interests.

Proposed Intervenors fail to satisfy the third element for intervention, and the Motion should be denied for this reason alone.

### 4. The Settling Plaintiffs and Proposed Class Counsel Adequately Represent the Proposed Intervenors' Interests

Plaintiffs and their counsel have adequately represented class members' interests throughout this litigation and will continue to do so until the Settlement is approved and beyond.

To determine adequacy of representation, courts in the Ninth Circuit look to three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed

intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003) (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). The Ninth Circuit has stated that it is "well-settled precedent" that when proposed intervenors have the same "ultimate objective" as a party in the case, there is a presumption of adequacy of representation. *League of United Latin Am. Citizens*, 131 F.3d at 1305. This presumption may be overcome only "by evidence of collusion, adversity of interest, nonfeasance, incompetence, or lack of financial resources." *Miller v. Ghirardelli Chocolate Co.*, No. C 12-04936 LB, 2013 WL 6776191, at *8 (N.D. Cal. Dec. 20, 2013) (citation omitted).

Plaintiffs undoubtedly have the same ultimate objective as Proposed Intervenors, which is to provide relief to those who were affected by the Flagstar data breach. Having the same interests as Proposed Intervenors, there is no reason to doubt that Plaintiffs will make the same arguments. Nor is there any reason to doubt that Plaintiffs are capable and willing to make such arguments. Plaintiffs' counsel are among the most highly experienced data breach class counsel in the United States and are considered trailblazers in this practice area. *See* ECF No. 54-4, Ex. 2 (Ahdoot Wolfson firm resume). Their adequacy as class counsel has been previously endorsed by dozens of courts and by Proposed Intervenors' own counsel. *See, e.g.*, *Kroger*, No. 5:21-cv-01887-EJD (N.D. Cal. Nov. 5, 2021), ECF No. 98 at 3 (appointing Ahdoot Wolfson as co-lead class counsel in similar Accellion FTA Data Breach settlement with Kroger); *Remijas, et al. v. The Neiman Marcus Grp., LLC*, No. 1:14-cv-01735 (N.D. Ill. May 2, 2020), ECF No. 237, at 27-28 (Yanchunis endorsed Tina Wolfson and AW as adequate counsel in data breach final approval papers and Ahdoot Wolfson had single-handedly won the seminal Article III standing appeal in *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015)); *In re The Home Depot, Inc. Customer Data Sec. Breach Litig.*, No. 1:14-md-02583 (N.D. Ga. Feb. 2, 2015), ECF No. 49 (Yanchunis endorsed Tina Wolfson to serve on PSC); *Gordon, et al. v. Chipotle Mexican Grill, Inc.*, 17-cv-01415-CMA-SKC (D. Colo.), ECF Nos. 75, 75-4, 122, 123 (Yanchunis' firm and Ahdoot Wolfson worked together as co-counsel in data breach litigation where final approval of settlement was granted); *Cercas, et al. v. Ambry Genetics Corp.*, No. 8:20-cv-00791 (C.D. Cal.)

(Yanchunis' firm working with Ahdoot Wolfson in agreed upon lead counsel structure); *Cotter v. Checkers*, No. 8:19-cv-01386-VMC-CPT (M.D. Fla.) (Ahdoot Wolfson is co-counsel with Yanchunis and his firm); *In re Office of Personnel Management Data Security Breach Litigation*, No. 1:15-mc-01394-ABJ (D.D.C.) (Yanchunis and Wolfson appointed to PSC).

Proposed Intervenors provide no basis to conclude that they would offer any necessary elements to the proceeding that Plaintiffs would neglect. Rather, Proposed Intervenors present self-serving, purely speculative arguments that Proposed Intervenors would have extracted more from Flagstar than Plaintiffs have extracted. That is no basis for overcoming the presumption of adequacy of representation. Nor do Proposed Intervenors' objections lay that foundation. As discussed below, the objections are meritless, and there is nothing extraordinary about the proposed Settlement to compel straying from the rules (and the procedures provided for in the Settlement) that allow objections at final approval in the ordinary course. Plaintiffs' representation, like the Settlement it has produced, is more than adequate. Plaintiffs have thoroughly demonstrated that the Settlement is either in line with or better than many other data breach settlements. *See* Memorandum in Support of Prelim. Approval, ECF No. 54 at 27. This includes settlements that were led or endorsed by Yanchunis. *See infra* Part III.D.1.

Proposed Intervenors' claim of inadequate representation has no merit, and the Motion fails to satisfy the fourth element for intervention. The Motion should be denied for this reason alone.

**B.      The Court Should Decline Permissive Intervention**

Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Timeliness is thus explicitly required for permissive intervention no less than for intervention as of right. In fact, timeliness is analyzed "more strictly" in the context of permissive intervention under Rule 24(b) than for intervention as of right under Rule 24(a). *League of United Latin Am. Citizens*, 131 F.3d at 1308. Moreover, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

As explained above, Proposed Intervenors failed to satisfy the timeliness element for

intervention as of right. *See supra* Part III.A.1. And adding the Proposed Intervenors to the lawsuit would needlessly delay the proceedings, postpone class members' relief, and thus prejudice the adjudication of Plaintiffs' rights and the rights of the absent class members. Proposed Intervenors already have a mechanism to challenge the Settlement under Rule 23. The Court should deny permissive intervention.

### C. The Request for Severance and Transfer Should Be Denied

Proposed Intervenors request that the claims in this case against Flagstar be severed from the claims against Accellion and transferred to the district court in Michigan on two grounds: the fact that the Michigan case was filed three business days before the present case; and the appointment of Proposed Intervenors' counsel as Interim Lead Counsel in the Michigan case. Neither ground warrants severance and/or transfer.

The first-to-file rule is "a judicially created 'doctrine of federal comity,' . . . which applies when two cases involving 'substantially similar issues and parties' have been filed in different districts." *In re Bozic*, 888 F.3d 1048, 1051 (9th Cir. 2018) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) and *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015)). "Under that rule, 'the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy.'" *Bozic*, 888 F.3d at 1051-52 (quoting *Cedars–Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)); *accord ASUSTeK Computer v. AFTG-TG LLC*, No. 5:11-cv-00192-EJD, 2011 WL 6845791, at *14 (N.D. Cal. Dec. 29, 2011) (Davila, J.) ("The 'first to file' rule is based on principles of judicial efficiency, judicial comity, and sound judicial administration."). "The most basic aspect of the first-to-file rule is that it is discretionary." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).

The filing of multiple class actions on the same or similar subject matter is commonplace. If a first-to-file rule governed competing class actions, there would be no need for any of the other arguments in this motion or in the countless other contexts in which tensions arise, including MDL proceedings. But that is clearly not how the class-action world works. It is not simply a race to the courthouse door. Myriad factors can affect whether, when, and which cases are consolidated, stayed, or litigated on entirely separate tracks.

1       It may sometimes make sense for one case to be transferred, stayed, or dismissed in favor of

2 another case. If one case is near resolution and another is filed anew in a different court, the judicial

3 interest in comity and efficiency is obvious. No such interest exists in the present case. This case was

4 filed just three business days after the Michigan case; it has proceeded to a proposed nationwide class

5 action settlement while the Michigan case has not; and the Michigan case has been stayed pending the

6 completion of the settlement process in this case. Nothing in the considerations informing the first-to-

7 file rule supports its application here. To the contrary, those same considerations strongly weigh in

8 favor of continuing this proceeding and rejecting the requested severance and transfer.

9       It is telling that *Angus* counsel never argued for any transfer—and in fact opposed the MDL

10 and streamlining of any sort—until there was a Settlement here. Yanchunis was content to proceed on

11 his own course, without any of the concerns he now raises, until months after finding out that this

12 matter had settled. His motivation is not the best interest of the class, or judicial efficiency, but rather

13 control of the case at all costs. It would make little sense for this Court now, at this late stage with

14 preliminary approval pending, to suddenly order what neither the JPML nor Proposed Intervenors

15 thought necessary before. It is in the best interest of the class for the preliminary approval process to

16 proceed here and now.

17       The decision in *Martin v. Cargill, Inc.*, 295 F.R.D. 380 (D. Minn. 2013) in fact confirms that

18 the Court would be right to proceed with preliminary approval. The *Martin* court considered the

19 preliminary approval of the proposed settlement *prior* to any consideration of transfer under the first-

20 filed rule. *Id.* at 384-87.

21       The remainder of *Martin* does not support Yanchunis' cause either. After consideration, the

22 *Martin* court denied preliminary approval without prejudice because it did not have sufficient

23 information to evaluate the claims. *Id*. In contrast, the Court here has all the required information

24 before it on the Preliminary Approval Motion to make a reasoned assessment of the value of the claims

25 and whether the proposed compromise is fair, reasonable, and adequate.

26       Further, the *Martin* court was concerned that defense counsel waited more than six weeks to

27 inform the Hawaii court, where an action had been filed months prior to the Minnesota action, of the

28 settlement. The Court elaborated that while Cargill's counsel argued that his duty was to his client

only, defense "counsel's failure to quickly alert the Hawaii court once *a settlement had been reached—a settlement that subsumed the Hawaii case—*seems to violate the spirit of counsel's duty of candor to that tribunal." *Id.* at 388 n.11 (emphasis in original). (That was the crux of the court's concern—not that mediation occurred with one set of counsel and not the other.) In contrast, the *Angus* counsel were fully aware of and attended the first mediation. Yanchunis could have but chose to not disclose the mediation to Judge Tarnow. Flagstar notified Angus and Judge Tarnow of the Settlement two days after the second mediation. *Martin* is simply not a close parallel and that court's close judgment calls simply do not apply here.

Further, after the *Martin* court denied preliminary approval without prejudice to show cause why the action should not be transferred to the first-filed case (filed months prior), the settling plaintiffs never renewed or supplemented their approval motion, while the case in Hawaii continued to progress and defendant filed a petition to consolidate with the JPML. After the JPML denied consolidation, and noting that the Hawaii case kept on progressing, while the settling plaintiffs did nothing in Minnesota (not even a further request for preliminary approval) and noting that a third case from another jurisdiction was already transferred to Hawaii, the court exercised its discretion to transfer the case to Hawaii under the first-filed rule. *Martin, et al. v. Cargill, Inc.*, 13-cv-02563-RHK-JJG (D. Minn. May 2, 2014), ECF No. 66 (transfer order). None of these relevant circumstances are present here, and this Court is free to use its discretion to deny transfer and complete the settlement approval process while *Angus* remains stayed. The best interests of the class and judicial economy compel this result.

Proposed Intervenors' second argument for severance is that their counsel was appointed interim lead counsel in the Michigan case and thus Plaintiffs' counsel would be "evad[ing]" the appointment of interim lead counsel in Michigan if this case were to continue. To put it gently, this is an insubstantial argument. Plaintiffs' counsel, litigating the present case in this Court, has every right to reach a settlement on behalf of the class and present it here, regardless of who has the lead role in a parallel case in another district court. More broadly, this Court is a coordinate of, not subordinate to, the Michigan court, and is not to be led by the nose just because one law firm rather than another was given the lead role there. And, as Magistrate Judge Grand pointed out in his Order staying *Angus*, over Yanchunis' objections, his interim lead counsel designation in *Angus* gives him no authority over the

California cases: "the Angus plaintiffs point to no law that *required* Flagstar to include them in this follow-up mediation session, and courts have concluded that a defendant is free to settle with a party in one jurisdiction not represented by interim lead counsel in another jurisdiction. *See Pearson v. Target Corp.,* 968 F.3d 826, 830, 835 (7th Cir. 2020) (rejecting a settlement objector's argument that, given his counsel's pre-settlement interim appointment in another jurisdiction, "his counsel was the only counsel 'with authority' to settle his proposed class's claims")." *See* Order Granting Motion to Stay, *Angus*, ECF No. 46 at 2-3 n.2 (emphasis in original), concurrently filed as Ex. A; *accord Pieterson v. Wells Fargo Bank, N.A.*, No. 17-CV- 02306-EDL, 2019 WL 1466963, at *3 (N.D. Cal. Feb. 14, 2019) (staying action despite appointment of interim lead counsel due to settlement in another jurisdiction).

*Angus* counsel opposed MDL consolidation and took no other action to transfer any cases, and the cases remained in multiple jurisdictions, not an uncommon result in class action litigation. *See, e.g.*, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008). Resolution was reached in one case, but not the others. So it goes. There is nothing unusual here to support intervention or transfer.

**D.      The Objections Have No Merit**

The Settlement is the product of arms-length negotiations between experienced counsel before a highly respected mediator. Wolfson Decl. ¶ 2. Counsel had all the necessary information prior to agreeing to resolution. *Id.* The Settlement is more than adequate. *Id.* Plaintiffs' Motion for Preliminary Approval and supporting memorandum of law and declaration (ECF Nos. 54, 54-4) extensively analyze each of the factors that courts are to evaluate in deciding on preliminary approval of a class action settlement. Those factors clearly establish that the settlement is fair, reasonable, and adequate.

**1.      The Settlement Consideration Is Excellent in Light of Approved Settlements and the Risks of Litigation**

Proposed Intervenors contend that the relief provided by the Settlement is inadequate, but ignore the extensive analysis of the value of the Settlement provided in light of the specific circumstances of this case set forth in the Motion for Preliminary Approval papers. *Id*.

The only support for Angus' position is that four other cases, with class sizes ranging from

17,831 (*Nelson v. Idaho Central Credit Union*[1]) to 130,000 (*Henderson v. Kalispell Regional Healthcare*), settled for a higher *per capita* value. *See* ECF No. 62 at 23. Not only is this not a wholistic approach to evaluating a settlement, but it ignores the numerous other settlements with multi-million class sizes and similar types of data—many of which Yanchunis himself endorsed—that present a similar or smaller *per capita* recovery (and the myriad other arguments as to why this Settlement is fair, as set forth in the Motion for Preliminary Approval papers). *See, e.g.*, *In re: Equifax Inc. Customer Data Security Breach Litigation*, Case No. 1:17-md-2800-TWT (N.D. Ga.) ($2.59 *per capita*; Yanchunis endorsed settlement as PSC member); *Adlouni v. UCLA Health System Auxiliary, et al.,* No. BC 589243 (Cal. Super. Ct.) ($0.44 *per capita*; Yanchunis endorsed settlement as PSC member); *In re Premera Blue Cross Customer Data Security Litigation,* No. 3:15-md-2633-SI (D. Or.) ($3.61 *per capita*); *In re Experian Data Breach Litigation*, No. 8:15-cv-01592 (C.D. Cal.) ($1.37 *per capita*); *In re Anthem, Inc. Data Breach Litig.,* No. 5:15-md-02617-LHK (N.D. Cal.) ($1.45 *per capita*), and others (*see* ECF No. 54 at 27 (*per capita* chart in Motion for Preliminary Approval)).

Further, Proposed Intervenor's argument ignores that this is a multi-defendant case and that this Settlement is only a partial resolution for Flagstar class members, who also have claims against Accellion arising from the Accellion FTA Data Breach. For example, the Flagstar class members here are also entitled to compensation from the recently-filed proposed $8.1 million Settlement with Accellion (resulting from the same FTA Data Breach), which is scheduled for a preliminary approval hearing in this Court on June 9, 2022. *See Fehlen, et al. v. Accellion, Inc.*, No. 5:21-cv-01353-EJD (N.D. Cal.), ECF No. 44.

Proposed Intervenors' complaint about injunctive relief fails to account for the fact that Flagstar is already governed by a comprehensive regulatory scheme pertaining to cybersecurity and data privacy, including regulations from the Office of the Comptroller of the Currency (OCC), the Gramm-

---

[1] Yanchunis cites the *Idaho Central Credit Union* settlement. *See* Motion to Intervene, ECF No. 62, at 23:5-8. There, class counsel only obtained a $1.55 million settlement fund for approximately 17,831 class members. But from that fund, counsel extracted a $1 million fee leaving roughly $550,000 to be distributed to the class and to pay for administration. It appears that as of final approval, only 766 class members had filed claims. *See Nelson, et al. v. Idaho Central Credit Union, et al.*, No. CV03-20-00832, CV03-20-03221 (Idaho 6th Judicial Dist. May 25, 2021), at 14, 16. The Flagstar Settlement is superior by any measure.

Leach-Bliley Act (GLBA), and the Federal Financial Institutions Examinations Council (FFIEC). ECF No. 54 at 8:17-21. At the time of the Accellion FTA Data Breach, such policies, processes, and procedures included encryption of customer information, including PII, in accordance with Flagstar's cryptography standards, both during transmission and when the data is at rest at endpoints, among many other features. Wolfson Decl. ¶¶ 11-12; *see also* ECF No. 54 at 8:22-26. Requiring encryption as part of the injunctive relief would essentially be requiring Flagstar to comply with its regulatory obligations and do that which it is already doing, which is not an appropriate or meaningful type of injunctive relief. Rather, the injunctive relief under the Settlement provides meaningful prospective relief: "Flagstar will confirm that it has fully ended its use of the Accellion File Transfer Appliance and migrated to a new secure file transfer solution; . . . undertake measures to secure, or securely destroy if and when it is no longer needed for legitimate business purposes, all information that was subject to the FTA Data Breach, and confirm that this has been completed; . . . conduct annual reviews of third-party data transfer vendors' product(s) with respect to data security and privacy; . . . enhance its existing third-party vendor risk management program . . . ." SA, ECF No. 55, at §§ 4.1.1-4.1.4. Flagstar will also engage in dark web monitoring for indications of fraudulent activity concerning class members' PII (*id.* at § 4.1.5) and is committed to all of these measures for a period of 5 years (*id.* at § 4.1). Furthermore, Flagstar will certify compliance with all injunctive relief measures annually. *Id.* at § 4.1.6.

Yanchunis claims that the Settlement does not provide for a data destruction policy. But the Settlement requires that Flagstar will "undertake measures to secure, or securely destroy if and when it is no longer needed for legitimate business purposes, all information that was subject to the FTA Data Breach, and confirm that this has been completed." *Id.* § 4.1.2; Wolfson Decl. ¶ 13. Flagstar has also implemented additional automated compliance with its data retention policies on file-sharing platforms to ensure data will be auto-deleted after thirty days. ECF No. 54 at 11:3-4; Wolfson Decl. ¶ 13. Yanchunis' claim about data destruction is simply false.

Proposed Intervenors' objections fail to address relevant settlement precedent, or the risks of litigation at all, especially in light of the unique circumstances this case presents. Yanchunis' blanket assertions that the Settlement Benefits are inadequate have no basis in fact or law.

### 2. There Was No "Reverse Auction"

The Settlement is the product of many weeks of adversarial, arm's length negotiations, including two mediations before a highly respected mediator who has much experience with privacy and data breach cases. Wolfson Decl. ¶ 2. Proposed Intervenors' claim that the Settlement is a "reverse auction" is a baseless and offensive accusation that should not be countenanced by the Court. This argument was previously offered by Yanchunis and his posse of co-counsel in the *Kroger* matter, and the Court rejected the argument. *Cochran*, 2021 WL 5161921, at *1 (denying intervention).

The Ninth Circuit has stated that absent evidence of "underhanded activity," considering a class action settlement to be a reverse auction "would lead to the conclusion that no settlement could ever occur in the circumstances of parallel or multiple class actions—none of the competing cases could settle without being accused by another of participating in a collusive reverse auction." *Negrete*, 523 F.3d at 1100 (quoting *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002)).

Here, Plaintiffs and Proposed Intervenors jointly participated in a first mediation that proved fruitless. Wolfson Decl. ¶ 7. Subsequently, Plaintiffs engaged in a second mediation that produced the settlement. *Id.* ¶ 8. Proposed Intervenors offer no evidence that they made any effort to engage with Flagstar in a second mediation, which they apparently did not. Instead, they simply complain that Plaintiffs succeeded where Proposed Intervenors failed. But there are many potential explanations for why a settlement is reached in one class proceeding rather than another. The naked fact that the Proposed Intervenors' counsel did not participate in the second mediation does not transform the settled action into a reverse auction. Much more is required but is utterly lacking here. Proposed Intervenors provide absolutely no evidence, nor does any exist, that there was any impropriety in the settlement negotiations.

Proposed Intervenors' only argument that the Settlement is a "reverse auction" is a purely speculative contention that Proposed Intervenors would have procured a more favorable settlement than Plaintiffs procured. The contention is not only baseless, but counterfactual. Proposed Intervenors participated with Plaintiffs jointly in the first mediation and went home empty-handed. *Id.* ¶ 7. Proposed Intervenors and their counsel subsequently accomplished nothing. While Proposed Intervenors attribute Plaintiffs' success to a willingness to accept too little (this is erroneous), Plaintiffs

could just as easily attribute Proposed Intervenors' failure to an obstinate and unrealistic insistence on excessive demands motivated not by the best interest of the class, but by whatever expectations Yanchunis may have had or whatever promises he may have made to the cabal of six other law firms supporting him in the Michigan action. *See Angus*, ECF No. 38, at 106-07 (signature block of operative complaint in *Angus*). The Court should not wade into that muck and should instead base its decision on the normal considerations guiding the assessment of fairness, reasonableness, and adequacy in class action settlements. Plaintiffs have provided ample analysis as to why the Settlement is for the amount that it is, and Proposed Intervenors' objections do not begin to disturb that solid foundation.

The Court should reject Proposed Intervenors' motion and proceed with the preliminary approval process.

## IV.     CONCLUSION

The motion to intervene and sever, and the objections to the Settlement, should be denied in their entirety, and preliminary approval of the Settlement should be granted.

Dated: January 18, 2022                        Respectfully submitted,


                                                       */s/ Tina Wolfson*
                                                       TINA WOLFSON (SBN 174806)
                                                       *twolfson@ahdootwolfson.com*
                                                       ROBERT AHDOOT (SBN 172098)
                                                       *rahdoot@ahdootwolfson.com*
                                                       **AHDOOT & WOLFSON, PC**
                                                       2600 W. Olive Avenue, Suite 500
                                                       Burbank, CA 91505-4521
                                                       Tel:  310.474.9111; Fax: 310.474.8585

                                                       ANDREW W. FERICH (admitted *pro hac vice*)
                                                       *aferich@ahdootwolfson.com*
                                                       **AHDOOT & WOLFSON, PC**
                                                       201 King of Prussia Road, Suite 650
                                                       Radnor, PA 19087
                                                       Tel:  310.474.9111; Fax: 310.474.8585

                                                       *Class Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, I caused to be filed the foregoing document. This document is being filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: January 18, 2022                                     _/s/ Tina Wolfson_____
                                                                              Tina Wolfson

PLAINTIFFS' OPPOSITION TO PROPOSED INTERVENORS' MOTION TO INTERVENE AND TO SEVER AND
TRANSFER CLAIMS AND IN OPPOSITION TO PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
No. 5:21-cv-02239-EJD